IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Kristin Kollinger,

                Plaintiff,      Case No. 1:16-cv-04470

v.                                        Michael L. Brown
                                              United States District Judge

Life Insurance Company of North
America,

                Defendant.
_____/

## ORDER

Plaintiff Kristin Kollinger had to stop working because of fatigue. After Defendant Life Insurance Company of North America ("LINA") denied her claim for disability benefits, Plaintiff sued. Defendant moved for judgment on the administrative record. (Dkt. 20.) The Court treats Defendant's motion as a trial on the papers under Rule 52(a) of the Federal Rules of Civil Procedure. After reviewing the administrative record, the Court grants Defendant's motion.

## I.     Judgment on the Administrative Record

Defendant seeks judgment on the administrative record. When a decision is based on the agreed-upon administrative record, judicial economy favors courts using findings of fact and conclusions of law. *See Doyle v. Liberty Life Assur. Co.*, 542 F.3d 1352, 1363 n.5 (11th Cir. 2008). In an ERISA case, a court, not a jury, is the proper fact finder. *See Chilton v. Savannah Foods & Indus., Inc.*, 814 F.2d 620, 623 (11th Cir. 1987).

The Court thus considers this case "in the context of a trial on the papers, which constitutes the trial of this case, but without the need for the parties or counsel to appear, because the Court's review is limited to the administrative record, aided by the parties' briefs." *Miller v. The Hartford Life and Acc. Ins. Co.,* No. 1:08-CV-2014, 2010 WL 1050006, at *1 (N.D. Ga. Mar. 17, 2010). Under Rule 52 of the Federal Rules of Civil Procedure, "[i]n an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately." FED. R. CIV. P. 52(a).

## II.   Findings of Fact

Plaintiff worked as a consultant for Slalom LLC ("Slalom") until May 2013. (Dkt. 20-2 at 42.) She stopped working because of fatigue, pain, nausea, vomiting, and weakness. (Dkt. 20-5 at 159.) She applied for and received short-term disability benefits from May to August 2013, when LINA approved her for long-term benefits. (Dkt. 20-15 at 165.)

LINA administers Slalom's benefits plan (the "Plan"). (Dkt. 20-17 ¶ 5.) As the Plan's administrator, LINA decides benefits claims and appeals. (Dkt. 20-2 at 32.) Under the Plan, "[t]he Insurance Company will pay Disability Benefits if an Employee becomes Disabled while covered under the Policy." (*Id.* at 18.) "The Employee is considered Disabled if, solely because of injury or sickness, he or she is: 1. Unable to perform the material benefits of his or her Regular Occupation and 2. Unable to earn 80% or more of his or her Indexed Earnings from working in his or her regular occupation." (*Id.* at 7.) The Plan contains a specific limitation for Mental or Nervous Disorders. If the employee's disability "is caused by, or contributed to by," an anxiety, delusional, depressive, eating, or somataform disorder or mental illness, then that employee is limited to two years of disability benefits. (*Id.* at 21.)

3

Facing confusing symptoms, Plaintiff went to many doctors from 2013 to 2015. The Mayo Clinic found she had decreased pseudomotor function and cognitive slowing. (Dkt. 20-5 at 19–23, 28.) Dr. Jeffery English, Plaintiff's neurologist, found she had either fibromyalgia or an autoimmune illness, like lupus. (Dkt. 20-11 at 116–18.) He also thought her issues were organic (non-mental). (Dkt. 20-4 at 70.) Dr. Lisa Robbins, Plaintiff's primary care physician, found Plaintiff had severe fatigue. (Dkt. 20-12 at 182.) No unifying diagnosis from the doctors emerged, but these doctors and others all found that Plaintiff suffered from extreme fatigue. (*See* Dkt. 27-1 at 3–6.) Several doctors also diagnosed depression. (*See id.*) Dr. Steven Shindell, Plaintiff's psychologist, performed a neuro-psychological evaluation to measure her cognitive condition. He found her responses could "reflect exaggeration." (Dkt. 20-14 at 5.) Dr. Stephen Schacher, who is board certified in occupational medicine, found that Plaintiff's fatigue came from a sleep disturbance, stress, fibromyalgia, or depression. (Dkt. 20-11 at 14.) He restricted her to sedentary work. (*Id.* at 17.) And Dr. Julian Bragg, a neurologist, diagnosed her with polyneuropathy, fatigue neurosis, myalgia, pain, and weakness. (Dkt. 20-5 at 95–96.)

Dr. Penny Chong, an associate medical director for LINA, reviewed Plaintiff's medical records in August 2015 to determine whether LINA would grant Plaintiff continued disability benefits. (Dkt. 20-2 at 114–15.) Dr. Chong found continued disability benefits inappropriate because "authentic functional loss was not demonstrated." (*Id.*) Based on this finding, LINA denied Plaintiff benefits. (Dkt. 20-15 at 58–59.) LINA wrote Plaintiff on this decision, stating, "[g]iven the available medical records regarding your physical condition, observed functions per your treating providers' notes, and the lack of exam findings to correlate with ongoing reported symptoms, functional impairment is not demonstrated." (*Id.* at 49.)

Plaintiff appealed LINA's decision. For the appeal, Dr. Charles Brock, who is board certified in neurology and pain management, performed an independent medical review of Plaintiff's medical records. Dr. Brock submitted his recommendation in October 2015. (Dkt. 20-8 at 143–48.) He found "the available medical records would not support delineating any restrictions/limitations from a neurological standpoint." (*Id.*) LINA then wrote Plaintiff to inform her that, because the medical

records did not support restrictions or limitations from a neurological standpoint, it was denying her benefits. (Dkt. 20-15 at 20–23.)

Upon receiving the letter, Plaintiff complained that Dr. Brock had not spoken to her treating physicians. (Dkt. 20-2 at 86.) Dr. Brock followed up with Dr. English and Dr. Robbins. After Dr. Brock spoke to Dr. English, he supplemented his finding, writing that Dr. English had not reached a diagnosis and that Dr. English did not have any "opinion on whether regarding any restrictions or limitations given that no neurologic diagnosis has been determined." (Dkt. 20-8 at 129.) Dr. Brock issued a second addendum after speaking to Dr. Robbins. Dr. Brock wrote that Dr. Robbins "felt the patient is restricted in function but that it is from an endocrine or internal medicine perspective and is not specific to neurology." (Dkt. 20-8 at 113.) Dr. Brock did not change his opinion that the medical records did not support medically necessary work activity restrictions. (*Id.* at 113–14.)

Plaintiff met with Dr. Susan Kolb in April 2016. Dr. Kolb found that Plaintiff had fatigue, candidiasis, Epstein-Barr virus ("EBV"), and possible cytomegalovirus ("CMV"). (Dkt. 20-12 at 88.) Plaintiff also underwent a Functional Capacities Evaluation ("FCE"). The FCE

showed Plaintiff had less than sedentary work capacity because of fibromyalgia, chronic fatigue syndrome, small neuropathy, adrenal disorder, and endocrine disorder. (*Id.* at 90.) The FCE report stated that "it does not appear that Ms. Kollinger will be able to hold gainful employment even in a part-time capacity." (*Id.*) The Social Security Administration also determined Plaintiff was disabled. (Dkt. 20-14 at 177–81.)

Presenting this information to LINA, Plaintiff appealed LINA's decision again. LINA agreed to perform a second voluntary appeal review. For this appeal, LINA had four doctors independently review Plaintiff's medical records. Dr. Ashot Kotcharian, who is board certified in physical medicine and rehabilitation, found that from a physical medicine and rehabilitation perspective, Plaintiff did not require any work activity restrictions. (Dkt. 20-12 at 71.) Dr. Kotcharian noted that many doctors had diagnosed Plaintiff with several diseases.[1] (*Id.*) He

---

[1] These diseases include fibromyalgia, chronic fatigue syndrome, central sensitization syndrome, small fiber neuropathy, polyneuropathy, chronic pain syndrome, proximal myopathy, carpal tunnel syndrome, patella femoral syndrome, spina bifida occulta, and multiple joint pain.

found, however, that Plaintiff was not still physically impaired by the conditions with which she had been diagnosed. (*Id.*)

Dr. Stephen Selkirk, who is board certified in psychiatry and neurology, found that from a neurological perspective, Plaintiff needed no medically required work restrictions. Dr. Selkirk spoke with Dr. English, Dr. Robbins, and Dr. Kolb. Dr. English told him that Plaintiff's "complaints were caused by 'depression and anxiety.'" (*Id.* at 10.) Dr. Robbins told him that doctors had not identified a diagnosis for her symptoms. (*Id.*) Dr. Kolb told him Plaintiff was disabled because of candidiasis. (*Id.*) Dr. Selkirk disagreed with Dr. Kolb's diagnosis, finding "no evidence of chronic viral or fungal infections in the claimant causing significant symptoms." (*Id.*)

Dr. Timothy Bergan, who is board certified in family practice and preventive and occupational medicine, found that Plaintiff was not limited in his physical functioning. (Dkt. 20-11 at 202–03.) Dr. Bergan spoke with Dr. Robbins, who indicated "that [Plaintiff] has no physical limitations that would preclude her from working." (*Id.*) Dr. Bergan also spoke with Dr. English, who told him that "[his] only concern regarding physical restrictions/limitations was the claimant's fatigue." (*Id.*) Dr.

8

Bergan also noted that Plaintiff's file included a diagnosis of the Epstein-Barr virus. (Dkt. 20-12 at 131.) Lorraine Benuto, who has a Ph.D. in Clinical Psychology, did not "find any mental health condition in this case that indicates impairment that substantiates restrictions or limitations." (Dkt. 20-12 at 41–42.) Dr. Benuto noted mental health difficulties, but she found "these do not preclude [Plaintiff] from continuous gainful employment." (*Id.*)

LINA reviewed the four physicians' reports and upheld the decision to deny Plaintiff benefits. (Dkt. 20-2 at 52.) LINA informed Plaintiff of this decision in August 2016. (Dkt. 20-15 at 7–9.)

LINA separates the determination of claims and appeals from the financial incentives of its employees. For instance, LINA pays fixed salaries to the employees who decide whether to grant or deny a benefits claims. (Dkt. 20-17 ¶ 10.) LINA does not have quotas for these employees to reach and LINA does not evaluate employees based on how many claims are paid or denied. (*Id.* ¶¶ 13, 14.) LINA maintains an appeals unit that is separate from its claim department. (*Id.* ¶ 20.) Neither the benefits department nor the appeals department have any role in LINA's financing. (*Id.* ¶¶ 22–23.)

## III. Conclusions of Law

### A.  ERISA Claims Standard

When an ERISA plan provides the claim administrator discretion to decide a benefits claim, a court reviews the determination under the arbitrary and capricious standard. *See Lee v. Blue Cross/Blue Shield of Al.*, 10 F.2d 1547, 1549–50 (11th Cir. 1994).[2] The parties agree LINA had

---

[2] Plaintiff argues the Court should not apply the arbitrary and capricious standard because LINA denied her claim based on the Mental or Nervous Disorder limitation. It is true that if a claim is denied because of an exclusion then the plan administrator must show the claimant's condition falls within an exclusion. *See Horton v. Reliance Standard*, 141 F.2d 1038, 1040 (11th Cir. 1998) ("[I]f the insurer claims that a specific policy exclusion applies to deny the insured benefits, the insurer generally must prove the exclusion prevents coverage."). And the Court notes that the Eleventh Circuit has not ruled on whether the same standard guides a limitation and an exclusion. Authority points each way. *Compare Okuno v. Reliance Standard Life Ins. Co.*, 836 F.3d 600, 609 (6th Cir. 2016) ("[The insurer] bears the burden to show that the exclusion on which it based denial of benefits, the Mental and Nervous Disorder Limitation, applies in this case.") *with Aleksiev v. Met. Life Ins. Co.*, 1:10-cv-3322, at *43 (N.D. Ga. March 9, 2012) ("The burden remains with Plaintiff to show that she is entitled to receive benefits under the Long Term Disability Plan."). Plaintiff's argument fails in that LINA denied Plaintiff's claim on two rationales: (1) Plaintiff is not disabled, and (2) if she is disabled then the disability stems from a mental disorder. Since the Court finds LINA's decision that Plaintiff was not disabled is not arbitrary and capricious, the Court does not address the exclusion/limitation discussion.

10

discretion under the Plan. (*See* Dkt. 27-1 at 14.) In ERISA cases, courts have a six-step process for evaluating whether a plan administrator's decision was arbitrary and capricious:

> (1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.
> (2) If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.
> (3) If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).
> (4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.
> (5) If there is no conflict, then end the inquiry and affirm the decision.
> (6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

*Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1355 (11th Cir. 2011).

For the final step, upon a conflict of interest, "the burden remains on the plaintiff to show the decision was arbitrary; it is not the defendant's burden to prove its decision was not tainted by self-interest." *Doyle v. Liberty Life Assur. Co. of Boston*, 542 F.3d 1352, 1360 (11th Cir.

11

2008). And "[e]ven where a conflict of interest exists, courts still 'owe deference' to the plan administrator's 'discretionary decision-making' as a whole." *Blakenship*, 644 F.3d at 1355 (quoting *Doyle*, 542 F.3d at 1363.).

## B. Discussion

The Court first determines de novo whether LINA correctly found Plaintiff not disabled. "Review of the plan administrator's denial of benefits is limited to consideration of the material available at the time it made its decision." *Blankenship*, 644 F.3d at 1354. Plaintiff argues there is overwhelming evidence that she is disabled. She points to statements by Dr. Bragg, Dr. English, Dr. Robbins, Dr. Kolb, and Dr. Schacher. Plaintiff claims these doctors' opinions are helpful because they treated her. Plaintiff also argues the Social Security Determination and the FCE are compelling evidence that she is disabled. *See Wise v. Hartford Life & Acc. Ins. Co.*, 360 F. Supp. 2d 1310, 1326 (N.D. Ga. 2005) (describing FCEs as "the best means of assessing an individual's functional level"). In opposition, LINA points to the five reviewing physicians' and Dr. Shindell's opinions finding Plaintiff not disabled.

In weighing the evidence, the Court must judge competing medical opinions. Not having medical training, the Court hesitates to determine whether Plaintiff was disabled. But upon review, the Court finds, following each reviewing physician's determination, Plaintiff not disabled.

The reviewing physicians had access to Plaintiff's medical records and they spoke with Plaintiff's treating physicians. The Court also finds holes in Plaintiff's evidence, particularly the lack of a clear opinion by Plaintiff's treating physicians, Dr. English and Dr. Robbins. Dr. English told two reviewing physicians that Plaintiff's symptoms come from fatigue. Dr. Robbins told a reviewing physician that Plaintiff had no physical condition that would limit her from working. The Court finds Dr. English's and Dr. Robbins's statements particularly important, given their extended time with Plaintiff.

Plaintiff seeks to minimize the reviewing physicians' opinions by arguing that the Court should give the opinions of doctors that treated her more consideration. The Supreme Court, however, has held that plan administrators, and courts, should give the opinions of treating doctors and reviewing doctors the same weight. *See Black & Decker Disability*

*Plan v. Nord*, 538 U.S. 822, 834 (2003) ("[N]or may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation."); *see also Oates v. Walgreen Co.*, 573 F. App'x 897, 909 (11th Cir. 2014) ("A plan administrator is not categorically required, however, to accept the opinions of the claimant's treating physicians over those of independent medical professionals who have reviewed the claimant's file but have not directly observed the claimant.").

Plaintiff also tries to cabin the reviewing doctors' opinions arguing that quantity does not equal quality. This may be true, but Plaintiff does not show any lack of quality in the reviewing doctors' opinions. The Court finds LINA's determination that Plaintiff was not disabled correct.

Even if LINA's decision were incorrect, the result here would be the same. If the Court finds the administrator's decision incorrect, then the Court looks to whether the administration had reasonable grounds for its decision. *See Blankenship*, 644 F.3d at 1355. LINA clearly had reasonable grounds for denying Plaintiff's claim. Every single reviewing doctor found Plaintiff not disabled. Though some doctors found her disabled, LINA did not act unreasonably by listening to the reviewing

14

doctors on the first and second appeals. *See Blankenship*, 644 F.3d at 1356 ("Even where Blakenship's own doctors offered different medical opinions than MetLife's independent doctors, the plan administrator may give different weight to those opinions without acting arbitrarily and capriciously."); *Slomcenski v. Citibank, N.A.*, 432 F.3d 1271, 1280 (11th Cir. 2005) ("Giving more weight to the opinions of some experts than to the opinions of other experts is not an arbitrary or capricious practice.").

Plaintiff has also not shown a conflict of interest that would render LINA's decision arbitrary and capricious. Since LINA both makes eligibility decisions and pays Plan claims, LINA had a conflict of interest. *See Blakenship*, 644 F.3d at 1355 ("A pertinent conflict of interet exists where the ERISA plan administrator both makes eligibility decisions and pays awarded benefits out of its own funds."). Even so, a plaintiff bears the burden to show the conflict of interest interfered with the defendant's decision. *See Doyle*, 542 F.3d at 1360. Plaintiff makes no argument here that LINA's conflict of interest rendered the decision arbitrary and capricious. In fact, only LINA argues on a conflict of interest, pointing to the different measures it put in place to remove the possibility of a conflicted decision. For instance, LINA pays employees reviewing claims

15

the same whether they approve or deny a claim. LINA also does not use claim outcomes in reviewing its employees' performance. In sum, Plaintiff has not shown a conflict of interest that interfered with LINA's decision. Since the Court finds LINA's determination correct, or that LINA had reasonable grounds to deny Plaintiff's claim, LINA's decision was not arbitrary and capricious.

## IV. Conclusion

The Court **GRANTS** Defendant Life Insurance Company of North America's Motion for Judgment on the Administrative Record (Dkt. 20) and **DISMISSES** this case.

**SO ORDERED** this 15th day of November, 2019.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE